Filed 12/6/22 In re V.R. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re V.R., a Person Coming Under the Juvenile Court Law. | B312319 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>SELIA C.,<br><br>　　Defendant and Appellant. | Los Angeles County Super. Ct. No. CK72824D |

　　APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Affirmed.

　　Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Selia C. (mother) contends that the juvenile court erred in summarily denying her Welfare and Institutions Code[1] section 388 petition, which sought to alter the order granting the maternal grandmother legal guardianship of her daughter, V.R. (born March 2012). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Petitions Concerning V.R.'s Half-Siblings

In 2008, a court sustained a petition under section 300 that mother and the father of her child, Rosemary R., had a history of engaging in violent altercations in Rosemary's presence, placing Rosemary and mother's other child, Damian C.,[2] at risk of physical and emotional harm. The children were placed in the home of the maternal grandparents. Mother was permitted to live in the same home and the children remained under the supervision of the Department of Children and Family Services (Department).

In January 2010, the Department filed another petition on behalf of Rosemary and Damian, alleging that mother had a history of illicit drug abuse, including of methamphetamine, was a current user of marijuana, and had been under the influence of drugs while the children were in her care. The Department also filed a petition on behalf of mother's third child, Francisco A., in connection with mother's drug use. The three children were

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] This name is sometimes also written as "Damien" in the record.

detained. In October 2010, a court found that mother was not in compliance with the case plan and terminated family reunification services. The children were placed with maternal grandmother. In 2012, maternal grandmother became the legal guardian of Rosemary, Damian, and Francisco.

## 2. The 2012 Petition and Related Proceedings

In May 2012, the Department received a referral alleging that a domestic violence dispute had taken place between mother and V.R.'s father, Ronald R. (father). Mother called maternal grandmother and asked her to pick mother up. When maternal grandmother arrived, mother ran outside, carrying the infant V.R., and was bruised and crying. The police arrived, but mother refused to file a report.

Maternal grandmother told a social worker that father had threatened mother that if she ever involved the Department with V.R. or ever left him or took V.R. from him, he would shoot maternal grandmother, V.R.'s half-siblings, and mother. Mother denied that she had called maternal grandmother or that there was any domestic violence between her and father but admitted that they had argued. Father also admitted that they had argued but denied any violence.

The court authorized a removal order and V.R. was detained. The Department filed a petition alleging that mother and father have a history of engaging in violent altercations in V.R.'s presence, endangering her and her siblings, and that father has a history of substance abuse and is a current abuser of marijuana. (§ 300, subds. (a), (b), (j).)

At the detention hearing, the court held that a prima facie case for detaining V.R. had been established. The court ordered the Department to provide mother and father with family

reunification services and ordered monitored visits. At the jurisdiction hearing, mother and father pleaded no contest to the court sustaining an amended petition that removed the allegations under section 300, subdivisions (a) and (j). At the disposition hearing, the court found by clear and convincing evidence that substantial danger existed to V.R. and there was no reasonable means to protect her without removal from the parents' custody. The court ordered family reunification services for father only, noting that section 361.5, subdivision (b)(10) applied to mother.[3] The court also ordered visitation for both parents.

In November 2012, V.R. was placed with maternal grandmother.

In the six-month status report, the Department stated that father had completed a parenting course and participated in individual counseling. Father was also participating in couple's counseling and a six-month anger management class. The Department stated that father was in compliance with the court ordered programs and recommended that family reunification services continue and that the court calendar a supplemental progress report in three months to address father's progress and

---

[3] This subdivision states that reunification services need not be provided when the court finds, by clear and convincing evidence, "[t]hat the court ordered termination of reunification services for any siblings or half-siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 . . . and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(10)(A).)

4

the possible return of V.R. to father.[4] The court adopted this recommendation.

In a progress report, the Department stated that father maintained a consistent visitation schedule with V.R. and completed all court-ordered counseling, classes, and drug testing. Father reported being ready to have V.R. returned to his custody. Mother and father were no longer living together. The Department recommended that V.R. be released to father and receive family maintenance services and the court so ordered. The court also ordered continued monitored visits for mother and that father could not supervise the visits, nor could mother reside with father.

In a status report, the Department stated that V.R. was doing well with father. Mother's visits with V.R. were inconsistent. Between March and May 2013, mother had regular visits with V.R. at maternal grandmother's home. In May, mother reported that she and maternal grandmother were no longer on speaking terms. As of the date of the Department's report, she had not visited V.R. for two months. The Department recommended terminating jurisdiction and awarding sole legal and physical custody of V.R. to father, and that mother be allowed monitored visitation.

In September 2013, the court awarded custody of V.R. to father and ordered supervised visitation for mother.

---

[4] The status report also attached certificates reflecting mother's participation in individual counseling and completion of parenting and domestic violence classes. It also attached 13 drug tests performed by mother, of which one, taken June 28, 2012, was positive for methamphetamine.

### 3.     The 2014 Petition and Related Proceedings

In August 2014, the Department received a referral alleging that mother and father had participated in two armed robberies and that V.R. was present at the first of these. Mother and father were arrested in connection with the robberies. V.R. was initially released into the care of paternal grandmother but was placed with maternal grandmother in September 2014.

Mother told the Department that she and father had decided to take V.R. to the beach and some neighborhood kids tagged along. She stated that she was unaware that the kids were committing robberies. Mother also admitted that her visits with V.R. were supposed to be monitored by paternal grandmother but sometimes only father monitored her visits and that she sometimes stayed over at paternal grandmother's home.

In September 2014, the Department filed a section 300 petition alleging that mother and father failed to protect V.R. because they committed robberies while V.R. was under their care and supervision and because father had a history of illicit drug use and was a current user of marijuana. (§ 300, subd. (b).)

At the detention hearing, the court found that a prima facie case for detaining V.R. had been established. The court ordered the Department to provide family reunification services and monitored visits for both parents.

In the jurisdiction/disposition report, the Department stated that mother continued to deny being involved in the robberies but acknowledged that V.R. was present that day. Mother also denied that she or father used drugs. She stated that father had a marijuana card but would not smoke around V.R. and that she did not observe him under the influence. Mother also admitted that she had been living with father. Father denied

the robberies and denied that V.R. was present. He admitted to smoking marijuana twice a day but denied using drugs around V.R.

In December 2014, the court sustained the petition. The court ordered family reunification services and monitored visitation for the parents, including during their incarceration.[5]

In the six-month status review report, the Department reported that both parents had been convicted of second degree robbery and were sentenced to three years in prison. Mother had completed parenting classes, domestic violence classes, and anger management classes at her incarceration facility and had completed a few visitations with V.R. Father had not completed any classes and was not in compliance. At the six-month review hearing, the court ordered further family reunification services.

The 12-month status review report stated that mother was in partial compliance and father was not in compliance. V.R. was doing well in maternal grandmother's care and got along well with her older half-siblings. Maternal grandmother informed the Department that she took V.R. to visit mother at the detention center several times and that mother consistently called and wrote to V.R. Father did not call or write to V.R. In January 2016, the court found that continued jurisdiction was necessary, that mother was in compliance with the case plan, and that father was not in compliance with the case plan. The court ordered further family reunification services.

In the 18-month status review report, the Department recommended that family reunification services be terminated for

---

[5] Father appealed these findings and orders, which were affirmed on appeal. (*In re V.R.* (Aug. 11, 2015, B260998) [nonpub. opn.].)

7

mother and father. In June 2016, the court conducted a contested hearing as to father and terminated his family reunification services. The court continued the hearing as to mother to allow for her transportation to the court. In a last minute information to the court report, the Department stated that mother did not intend to appear at the hearing and recommended again that the court terminate family reunification services for mother. In August 2016, the court terminated family reunification services for mother and ordered a section 366.26 hearing.[6]

In the section 366.26 report, the Department stated that maternal grandmother had been V.R.'s primary caretaker since she was six months old and was committed to keeping V.R. and her half-siblings together. The Department recommended that jurisdiction be terminated and that maternal grandmother be granted legal guardianship.

In April 2017, the court appointed maternal grandmother as V.R.'s legal guardian and terminated dependency jurisdiction over V.R.

## 4. Section 388 Petitions

In November 2018, mother filed a section 388 petition requesting that she be granted custody of V.R. because she was V.R.'s mother, V.R. wanted to be with her, and V.R. was not safe in her current placement. The request was denied because it did not state any new evidence or show a change of circumstances.

---

[6] Mother filed a notice of intent to file writ petition that day stating that she intended to challenge the findings and orders made by the court. The writ was deemed non-operative. (*S.C. v. Superior Court* (B277150, Oct. 13, 2016).)

In July 2019, father filed a section 388 petition asking for V.R. be placed in his custody. Father stated that he was on a "straight road," had a job and his own place, and would be able to put V.R. in a better school. He also stated that V.R. wanted to be with him. The court ordered a hearing and directed the Department to prepare a report. In its response to the section 388 petition, the Department reported that father had yet to complete the courses previously ordered by the court or random drug and alcohol testing. He was unemployed, a current marijuana user, and had been inconsistent in his visits with V.R. The Department recommended that no family reunification services be provided and that the petition be denied. In October 2019, the court denied father's petition.

Father filed another section 388 petition in February 2020. Father stated that he had maintained a job, had a stable home, had completed job training, parenting and substance abuse courses, and had participated in counseling. Father also claimed that mother and maternal grandmother had kept him from seeing V.R. and that V.R. told him concerning things about her home life and maternal grandmother during their visits. Further, according to father, mother vandalized his home and stabbed him in March 2018. He asked that his claims against maternal grandmother be investigated, that V.R. be removed from maternal grandmother, and that he be awarded sole custody. His petition attached proof of enrollment and attendance for individual counseling, certificates of completion for the courses, and proof of enrollment in truck driving school. The court ordered a hearing and asked the Department to prepare another report. The hearing was continued due to Covid-19. In the meantime,

9

father filed a third section 388 petition. The court ordered another hearing and asked the Department to prepare a report.

In its response to the third section 388 petition, the Department stated that father maintained a suitable residence, had maintained employment prior to Covid-19, and had the support of his fiancée and extended family. Father reported that he had not spoken with mother since she purportedly stabbed him two years prior, a crime for which she went to prison.[7] Father stated that mother had married and he did not know where she was. The Department recommended that father's petition be granted, that jurisdiction be reinstated, and that father be offered family reunification services and be ordered to participate in random drug and alcohol testing and a 12-step program. The court adopted these recommendations.

In a status report dated March 2021, the Department stated that father had three unexcused "no shows" as well as two positive results from drug testing. The report also stated that V.R. had expressed a desire to remain with maternal grandmother because she wanted to remain close to her half-

---

[7] Because the Department's report only contained a current criminal history for father, not for mother, father's statements in his section 388 petition and to a social worker are the only evidence that mother stabbed him. However, the record supports that mother was incarcerated in September 2019, as the court issued an "Order for Prisoner's Appearance at Hearing Affecting Parental Rights" for mother to attend the hearing on father's first section 388 petition. The Department's response to father's first section 388 petition, filed October 2, 2019, also identified mother's address as a correctional facility. The Department reported mother's address as unknown in its response to father's third section 388 petition, filed October 8, 2020, suggesting that mother was no longer incarcerated by that time.

10

siblings and to be able to continue having visits with her mother. The Department recommended that family reunification services be terminated.

On April 2, 2021, mother filed a section 388 petition asking the court to modify the 2017 order granting maternal grandmother guardianship of V.R. Mother stated that she had completed domestic violence group counseling, parenting classes, and Alcoholics Anonymous/Narcotics Anonymous (AA/NA) and was participating in individual counseling. She attached a domestic violence group counseling certificate of completion dated November 18, 2020; a certificate of completion for a 12-week parenting course and a letter stating that she had completed the course on February 19, 2021; a certificate of completion of AA/NA dated November 1, 2020; and a March 16, 2021 letter from Southern California Counseling Center stating that mother had attended seven of 12 mandated classes, participated well, offered appropriate feedback, appeared to have a good grasp on the topics (e.g., how to manage emotions, discipline, and managing stress and anxiety), and appeared to be open to the therapeutic process. Mother asked that the court terminate the legal guardianship and return V.R. to her, or reinstate her reunification services and/or grant her unmonitored visits. Mother stated that the requested actions would benefit V.R. because V.R. needs her mother in her life and because mother had "made positive changes in [her] life, [was] ready to be the positive role model that [V.R.] needs, and [was] able to provide her with a safe, stable, and healthy environment."

On April 5, 2021, mother's section 388 petition was denied without a hearing.

11

Several days later, the Department filed a last minute information for the court report following a child abuse and neglect allegation from father. According to father, maternal grandmother allowed mother to enter the home and take V.R. whenever she wanted, without supervision. The Department reported that maternal grandmother had expressed feeling exhausted due to the demands of the Department, being treated "like a criminal," and telling her what to do in her home. Several times, she stated that she was done being a legal guardian, but then recanted. Maternal grandmother stated that she wished for circumstances to return to normal when the Department was not involved. According to maternal grandmother, mother and father are not good people, do not deserve to reunify with V.R., and simply view V.R. as a trophy. Maternal grandmother stated that mother and father fight over who gets more visits, which results in mother getting upset and taking V.R. with her. Mother called maternal grandmother names, such as "fucking bitch," and entered the home when she wanted.

Maternal grandmother reported that, on March 21, 2021, mother took V.R. for over four hours and brought her home late, and that on March 24, 2021, mother took V.R. at noon and returned after 9:00 p.m. Maternal grandmother was not okay with this but could not stop mother because she was afraid of her abuse. Maternal grandmother stated that mother cursed at her, told her " 'shut the fuck up mother fucken [*sic*] bitch,' " pushed her, threw her into a door, and stormed inside her house. The Department advised maternal grandmother to call the police when this happens, but maternal grandmother reported that the police would not do anything because she no longer had her guardianship documents.

On April 28, 2021, mother filed another section 388 petition, this time seeking modification of the order dated April 5, 2021, denying her previous section 388 petition without a hearing. The petition stated that she had completed courses and that unspecified allegations against her were not true. Mother asked for custody and unmonitored visits. Mother stated that she had proof that the requested actions would benefit V.R. but did not identify any such proof. The court denied the petition without a hearing.

On May 10, 2021, mother appealed the order dated April 5, 2021, which denied her second section 388 petition without a hearing.

## DISCUSSION

Mother contends that the court erred in summarily denying her second section 388 petition, filed April 2, 2021, without holding an evidentiary hearing. We disagree and affirm.

### 1. Legal Standards

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence. The petition must be verified and 'shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction.' (§ 388.)" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).)

"The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of

13

circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. [Citation.] We review the juvenile court's summary denial of a section 388 petition for abuse of discretion. [Citation.]" (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.)

The petition may not be conclusory. " 'Specific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.] Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing of the change in circumstances or new evidence." (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.) Similarly, "[w]hile the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests. [Citations.]" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.)

2. **The court's summary denial of Mother's section 388 petition was not an abuse of discretion.**

Having reviewed the record in full, we conclude that the court, which has presided over this case since September 2014, properly exercised its discretion in summarily denying mother's section 388 petition.

With respect to the first factor, the court reasonably concluded that mother's completion of parenting classes and NA/AA and her participation in domestic violence group counseling and individual counseling, without more, was

14

insufficient to demonstrate a genuine change in circumstances or new evidence. Despite her participation in counseling and various courses over approximately eight years, the record supports that mother failed to address the issues that resulted in V.R.'s removal and continued to engage in concerning conduct. For example, mother participated in counseling and completed parenting and domestic violence courses in 2012, yet brought V.R. along while she and father participated in armed robberies in 2014. She also completed parenting, domestic violence, and anger management classes in December 2014, but purportedly vandalized father's home and stabbed him in March 2018. Following further counseling and parenting courses in 2020 and 2021, mother forced her way into maternal grandmother's home, threw maternal grandmother into a door, cursed at her, and took V.R. for unsupervised visitation in violation of court orders, returning her hours later. These final incidents took place only a few weeks before mother filed her petition.

Further, although the letter from the counseling center indicated that mother participated well, the counselors did not opine that mother was prepared to provide appropriate care to V.R. Even if we assume that this time was different and the recent courses and counseling had effected a genuine change in mother (which her conduct belies), the trial court had no way of knowing that was the case absent further explanation from mother, or a doctor or counselor, as to how her outlook and situation were meaningfully different from in the past. As the court in *In re Angel B.* (2002) 97 Cal.App.4th 454 (*Angel B.*) observed, "other cases have held that simple completion of the kinds of classes taken . . . [citation] . . . by Mother here does not, in and of itself, show prima facie that either the requested

15

modification or a hearing would be in the minor's best interests." (*Id.* at p. 463, citing *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 and *In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.) Rather, in cases that have reversed summary denials of section 388 petitions, the petitions were accompanied by letters or declarations from doctors or physicians specifically opining that the parent was presently capable of providing suitable care to the child. (*Angel B.*, at p. 462, citing *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416 and *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798.)

Mother's petition also did not discuss her current living circumstances or relationship status. "The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citation.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) V.R. was initially removed from the home due to domestic violence. Two of V.R.'s half-siblings were also initially removed due to domestic violence in a prior relationship of mother's. Although mother and father are no longer together, whether mother is currently in a relationship and whether that relationship is different from her past relationships are highly relevant to a determination of whether her circumstances had changed. The petition was silent on these points. Nor was there evidence that mother had a housing situation suitable for V.R., that she was employed, or that she had arrangements for childcare while she worked.[8]

---

[8] The third of V.R.'s half-siblings was initially removed due to mother's use of illicit drugs. In June 2012, mother tested positive for methamphetamine, though her drug tests over the subsequent five

16

Turning to the second factor, mother's claim that reunification or liberalized visitation is in the best interest of V.R. because she "needs her mother in her life" is unavailing. "The presumption favoring natural parents by itself does not satisfy the best interests prong of section 388." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 192.) Rather, "a primary consideration in determining the child's best interest is the goal of assuring stability and continuity. [Citation.] When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. [Citation.] That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child. [Citation.]" (*Angel B.*, *supra*, 97 Cal.App.4th at p. 464.) "In fact, there is a rebuttable presumption that continued foster care is in the best interest of the child [citation] . . . ." (*Ibid.*) "To rebut that presumption, a parent must make some factual showing that the best interests of the child would be served by modification." (*Id.* at p. 465.)

There is no question that custody has continued over a significant period in this case. V.R., who was nine years old at the time mother filed her petition, had not been in mother's care since she was an infant. V.R. has lived with maternal

---

months were negative. There are no more recent drug tests from mother in the record. Although her completion of NA/AA was a positive step, the court could reasonably conclude that mother's failure to address whether she has maintained sobriety for a significant period suggests that her circumstances are changing, not changed. (See *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [to support a section 388 petition, the purported change of circumstances must be substantial; mother's "completion of a drug program, at this late a date, though commendable, is not a substantial change of circumstances"].)

grandmother since 2014 when she was two years old. Maternal grandmother also cared for V.R. between November 2012 and March 2013. The record supports that V.R.'s most stable and significant familial relationships have been with maternal grandmother and her half-siblings, who are also under maternal grandmother's legal guardianship. V.R. informed a social worker that she wished to remain with her grandmother because she wanted to stay close to her half-siblings. Maternal grandmother also reported that V.R. has a close relationship with her half-siblings.

Mother's vague representations that she has made positive changes in her life and is ready to be a role model fail to rebut the presumption in favor of maternal grandmother's continued legal guardianship. The petition does not offer any facts supporting that the benefits of placing V.R. with mother would outweigh the loss of stability and continuity that would result from removing V.R. from her home of many years and her half-siblings. Moreover, given mother's strained relationship with maternal grandmother, it appears unlikely that mother would prioritize maintaining V.R.'s bonds with maternal grandmother and V.R.'s half-siblings if she were granted custody of V.R.

Although the record indicates that maternal grandmother wavered in her commitment to remaining a legal guardian to V.R., it also supports that maternal grandmother was feeling frustrated and harassed by the Department and father's accusations when she said this and that she recanted every time. There is no indication in the record that maternal grandmother failed to properly care for V.R. due to her frustration. Thus, the court did not abuse its discretion in determining that mother

18

failed to make a prima facie showing entitling her to an evidentiary hearing.

Mother argues that *In re Aljamie D.* (2000) 84 Cal.App.4th 424 (*Aljamie D.*) is analogous to the circumstances present here and compels reversal. We disagree. In *Aljamie D.*, the mother was arrested when she was observed to be under the influence of drugs such that she could not care for her children. (*Id.* at p. 427.) At the 12-month review hearing, the Department recommended the termination of family reunification services, even though mother had recently enrolled in a residential drug rehabilitation program and was participating in parenting classes and visiting the children regularly. (*Ibid.*) The court terminated family reunification services and set a section 366.26 hearing. (*Ibid.*) At a review hearing, the Department reported that the mother had completed parenting classes and her drug rehabilitation program and continued to test clean in random drug testing. (*Ibid.*) At a second section 366.26 hearing, the Department argued that even though the children wanted to be with the mother and " '[e]ven though minors' mother has complied with all the court orders[,] she is not ready to reunify with her children.' " (*Id.* at p. 428.) The mother filed a section 388 petition, alleging that she had fully complied with the case plan and attaching completion certificates for parenting classes, a domestic violence program, and a job readiness course, among others. (*Ibid.*) She further alleged that the children wished to return to her and that she had visited them consistently. (*Ibid.*) The court denied the petition. (*Id.* at p. 430.)

The appellate court reversed, stating that the mother had clearly made out a prima facie case of changed circumstances by completing courses, testing clean in weekly random drug tests for

over two years, visiting consistently with the children, and continuing to have a strongly bonded relationship with them. (*Aljamie D., supra,* 84 Cal.App.4th at p. 432.) The court emphasized that the Department did not dispute that the circumstances had changed, but only that the petition failed to show how modification of the placement order would be in the children's best interests. (*Ibid.*) The court noted that the children had repeatedly made clear that their first choice was to live with the mother. (*Ibid.*) While the court in *Aljamie D.* acknowledged that this was not determinative, the court stated that a "child's testimony that she wants to live with her mother constitutes powerful demonstrative evidence that it would be in her best interest to allow her to do so. [Citation.]" (*Ibid.*)

Thus, in *Aljamie D.*, there was no dispute that the drug rehabilitation program and the courses mother had taken had effected a lasting change in the mother. Here, in contrast, the Department does not concede that mother has demonstrated changed circumstances. Rather, the Department argues that mother shoving maternal grandmother and taking V.R. out of the home for hours without authorization undermines mother's claim that she has addressed the issues that resulted in V.R.'s removal from her care. And, significantly, nothing in the record supports that V.R. wanted to live with mother. V.R. told social workers at different times that she wanted to remain with maternal grandmother or to live with father, but only stated that she wanted to continue having visits with mother. In *Angel B.*, the court emphasized that the fact that the children in *Aljamie D.* repeatedly expressed a desire to live with their mother was "clearly important and relevant to the outcome" of that case. (*Angel B., supra,* 97 Cal.App.4th at p. 463.)

20

In sum, we disagree with mother's contention that the court's summary denial of her section 388 petition renders the relief offered by section 388 "illusory" or that the record establishes that she was the most stable placement option for V.R. Mother failed to substantiate a genuine change in her circumstances or to support that granting her custody or liberalized visitation would be in V.R.'s best interests. The court therefore did not err in concluding that mother's participation in counseling and completion of courses was insufficient to support ordering an evidentiary hearing.

## DISPOSITION

The court's order summarily denying mother's section 388 petition is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


RICHARDSON, (ANNE K.) J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.